IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

THE STONEBRIDGE COLLECTION, INC.                                    PLAINTIFF

   v.                    Case No. 6:12-CV-6084

KEITH CARMICHAEL, GLENNA CARMICHAEL,
CUTTING-EDGE USA, LLC, JOHN MARK TAYLOR,
TAYLORMADE UNLIMITED, LLC and STEVEN MASSEY              DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiff The Stonebridge Collection Inc.'s (hereinafter "Stonebridge") Motion for Partial Summary Judgment and supporting materials (Docs. 35-39), Defendants John Mark Taylor ("Taylor") , TaylorMade Unlimited, LLC ("TaylorMade") , Keith Carmichael, Glenna Carmichael, Cutting-Edge USA, LLC, and Steven Massey's combined Response and supporting materials (Docs. 52-54); Stonebridge's Reply (Doc. 65); Separate Defendants Keith Carmichael, Glenna Carmichael and Cutting-Edge USA, LLC's Motion for Summary Judgment and supporting materials (Docs. 44-46), Stonebridge's Response and supporting materials (Docs. 56-57), Separate Defendants Keith Carmichael, Glenna Carmichael and Cutting-Edge USA, LLC's Reply and supporting brief (Docs. 68-69); Separate Defendants Taylor and TaylorMade's Motion for Summary Judgment and supporting materials (Docs. 41-43), Stonebridge's Response and supporting materials (Docs. 58-59), Separate Defendants John Mark Taylor, TaylorMade Unlimited, LLC's Reply (Doc. 66); Separate Defendant

Steven Massey's ("Massey") Motion for Summary Judgment and supporting materials (Docs. 48-50), Stonebridge's Response and supporting materials (Docs. 60-62); Stonebridge's Response Brief in Opposition to Defendants' Motions for Summary Judgment[1] (Doc. 63); Separate Defendant Massey's Reply (Doc. 67), and Stonebridge's Sealed Exhibit 13-A.

For the reasons set out below Stonebridge's Motion for Partial Summary Judgment (Doc. 35) is **GRANTED in part and DENIED in part**, Separate Defendants Taylor and TaylorMade's Motion for Summary Judgment (Doc. 41) is **GRANTED in part and DENIED in part**, Separate Defendants Keith Carmichael, Glenna Carmichael and Cutting-Edge USA, LLC's Motion for Summary Judgment (Doc. 44) is **GRANTED in part and DENIED in part**, and Separate Defendant Steven Massey's Motion for Summary Judgment (Doc. 49) is **GRANTED in part and DENIED in part**.

I.   **Procedural Background**

On June 26, 2012, Stonebridge filed its Original Complaint (Doc. 1).   Separate Defendants Keith Carmichael, Glenna Carmichael, Cutting-Edge USA, LLC, Taylor, TaylorMade filed responsive pleadings.   Separate Defendant Steven Massey did not

---

[1]  Stonebridge's Response Brief in Opposition to Defendants' Motions for Summary Judgment (Doc. 63) was submitted as a combined response to Separate Defendants Taylor and TaylorMade's Motion for Summary Judgment (Doc. 41), Separate Defendants Keith Carmichael, Glenna Carmichael and Cutting-Edge USA, LLC's Motion for Summary Judgment (Doc. 44) and Separate Defendant Massey's Motion for Summary Judgment (Doc. 49).

file a responsive pleading to the Original Complaint[2].

On April 9, 2013, Stonebridge filed its Amended Complaint (Doc. 25) and alleged that Defendants expropriated certain files from its computers, including artwork and customer lists, and used them in a scheme to defraud and unfairly compete. Stonebridge alleged ten causes of action: fraud, conversion, breach of fiduciary duties, violations of 18 U.S.C. §§ 1961 and 1964 (civil RICO), violation of Ark. Code. Ann. § 4-88-188 (state deceptive trade practices act violations), violations of 15 U.S.C. § 1125 (federal deceptive trade practices violations), violations of Ark. Code. Ann. § 4-75-601 (state misappropriation of trade secrets), common law tortious interference with known business expectancy, violation of 15 U.S.C. § 1125 (Lanham Act Violations), and common law negligent supervision.  All named defendants timely filed responsive pleadings denying wrongdoing. (Docs. 27-29).

On May 25, 2013, Stonebridge filed its Motion for Partial Summary Judgment (Doc. 35) and sought relief on the last eight of the stated ten causes of action.  On May 31, 2013, Separate Defendants John Mark Taylor ("Taylor") and TaylorMade Unlimited,

---

[2] On July 17, 2012, and July 23, 2012, Separate Defendant Steven Massey filed Notices of Filing Bankruptcy.  (Docs. 4-5).  On July 23, 2013, the Court entered an order staying this matter as to Separate Defendant Steven Massey pending the outcome of the bankruptcy proceeding (Doc. 6).  On November 13, 2012, the Honorable Richard D. Taylor, U.S. Bankruptcy Court Judge, Western District of Arkansas, entered an Order, on consent of the parties, granted Stonebridge relief from the automatic stay so as to pursue its claims against Separate Defendant Massey.  (See Doc. 13 Exh. 1).

LLC ("TaylorMade") filed their Motion for Summary Judgment (Doc. 41).   On June 5, 2013, Separate Defendants Keith Carmichael, Glenna Carmichael and Cutting-Edge USA, LLC filed their Motion for Summary Judgment (Doc. 44) and Separate Defendant Massey filed his Motion for Summary Judgment (Doc. 49).   All parties filed responses and replies to opposing parties' motions.

## II.   Standard of Review

In determining whether summary judgment is appropriate, the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law.   *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 479 U.S.317, 322 (1986).   The Court must review the facts in a light most favorable to the party opposing a motion for summary judgment and give that party the benefit of any inferences that logically can be drawn from those facts.   *Canada v. Union Elec. Co.,* 135 F.3d 1211, 1212-13 (8th Cir. 1998) (*citing Buller v. Buechler,* 706 F.2d 844, 846 (8th Cir. 1983)).

Once the moving party demonstrates that the record does not disclose a genuine dispute on a material fact, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in *Rule 56*, must set forth specific facts showing that there is a genuine issue for trial.   *Ghane v. West,* 148 F.3d

979, 981 (8th Cir. 1998) (*citing Burst v. Adolph Coors Co.,* 650

F.2d 930, 932 (8th Cir. 1981)).  In order for there to be a

genuine issue of material fact, the non-moving party must

produce evidence "such that a reasonable jury could return a

verdict for the nonmoving party." *Allison v. Flexway Trucking,*

*Inc.,* 28 F.3d 64, 66 (8th Cir. 1994) (*quoting Anderson v.*

*Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).  Furthermore,

"[w]here the unresolved issues are primarily legal rather than

factual, summary judgment is particularly appropriate." *Aucutt*

*v. Six Flags Over Mid-America, Inc.,* 85 F.3d 1311, 1315 (8th

Cir. 1996) (*quoting Crain v. Bd. of Police Comm'rs,* 920 F.2d

1402, 1405-06 (8th Cir. 1990)).

## III. Uncontroverted Facts

The following facts, unless noted otherwise, are deemed
uncontroverted and are viewed in a light most favorable to the
non-moving party.

1. Stonebridge is in the business of engraving and selling personalized etched knives.  Stonebridge sells knives to both end use customers and distributors.
2. Glenna Carmichael, Keith Carmichael (the Carmichaels) and Cutting-Edge USA, LLC (Cutting-Edge) are in the business of selling personalized engraved knives.
3. Taylor and TaylorMade are in the business of engraving personalized knives.
4. From 2007 through on or about July 23, 2009, Taylor worked for Stonebridge as its general manager.
5. From 2007 through on or about September 14, 2009, Massey worked for Stonebridge as its graphic artist.
6. As a graphic artist Massey was responsible for the creation and setup of artwork for lasers to engrave on knives.
7. No parties involved ever executed a non-compete agreement,

confidentiality agreement, non-disclosure agreement, agreement regarding creation or ownership of artwork, or any agreement of such kind.  (Doc. 38 at 5).

8.  Sometime in 2004 Keith Carmichael and Ken Harrelson, a salesperson for Stonebridge, discussed Cutting-Edge selling pocket knives engraved by Stonebridge.

9.  Stonebridge asserts that a loose business understanding was reached between it and Cutting-Edge which amounted to a "requirement contract" relationship and/or independent distributorship agreement.  (Doc. 39 at 9, Doc. 44 at 2).

10.  Cutting-Edge asserts that there was neither a contractual relationship nor any other relationship that bound the parties.   Cutting-Edge asserts it was free to use the services of any etcher, and did so.  (Doc. 42 at 7).

11.  From late 2004 through late 2010, Cutting-Edge sold and distributed knives to customers that were engraved by Stonebridge.

12.  From late 2004 through late 2010, Stonebridge provided at Stonebridge's expense samples of engraved knives to the Carmichaels and Cutting-Edge.

13.  Stonebridge asserts that between 2004 and 2011, in over 650 shipments, it delivered over 131,000 sample knives to the Carmichaels and Cutting-Edge.

14.  Customers who ordered knives through a distributor such as Cutting-Edge were referred to Stonebridge as "outside" customers and customers who ordered directly from Stonebridge were referred to as "inside" customers.

15.  Stonebridge asserts as part of its business model and the parties' course of dealing, once an order was placed directly, or once it was represented by a distributor such as Cutting-Edge that an order had been received, Stonebridge began the set up process to create a proof for the laser engraving machine.

16.  Stonebridge asserts that as part of the setup process it provided customers with free mock-ups on approval by the customer of their specific logos generally presented in two to four different layouts, setups or combinations (the "Proofs" contained on "Proof Selection Forms") and sent them for approval using e-mail and telefax communications.

17.  The Proofs are computer generated drawings of prospective designs to be placed on the knives, the "Art".

18.  The Proof Selection Forms and Final Proof Pages contained the Art and were used to assist with the ordering and selection process of the orders.

19.  Once completed, both the Proof Selection Forms and the Final Proof Pages generally contained an order number and also customer contact information, and when applicable a

notation indicating the order to be a reorder of a prior order.  (Doc. 38 at 17).

20. The Proof Selection Forms and Final Proof Pages would be sent either directly to "inside" customers or to the distributor to be delivered to "outside" customers.

21. Defendants assert in most instances Proof Selection Forms and Final Proof Pages were sent in a computer format commonly known as "PDF", but in some instances in a format commonly as "CDR".

22. Stonebridge asserts that the Art would be created or assembled, manipulated and stored in the native CDR file format at Stonebridge, and in PDF file format when sent out for customer reviews.  (Doc. 45 at 2).

23. On or about July 23, 2009, Taylor self-terminated his position with Stonebridge.

24. On July 28, 2009, Taylor formed TaylorMade, in which he is the sole member and manager.

25. On or about September 14, 2009, Massey self-terminated his employ at Stonebridge.  By September 18, 2009, he commenced working in the employ of Taylor and/or TaylorMade.

26. In about mid-2009, the Carmichaels and Cutting-Edge started using the engraving services of TaylorMade to fulfill their engraved knives orders.

27. When Massey left Stonebridge he took a flashdrive containing artwork and other documents which he downloaded from Stonebridge computers (before he self-terminated).  Massey loaded the flashdrive's contents onto his home computer, his work computer at TaylorMade, and transmitted some of the contents to Keith Carmichael and Cutting-Edge. (Doc. 42 at 6, Doc. 49 at 3).

28. Taylor and TaylorMade have utilized files sent by Stonebridge to Cutting-Edge and files obtained from Massey's flashdrive.

## IV.  Discussion

Stonebridge's motion sought relief on the last eight of the stated ten causes of action and Defendants filed three virtually identical motions on all causes of action.  For brevity, the Court will discuss the parties' motions jointly, considering each cause of action in turn and under the appropriate standard of review.

i.   **Breach of Fiduciary Duties**

The parties' motions on the breach of fiduciary duties cause of action is GRANTED in part and DENIED in part. Stonebridge's Complaint alleged Defendants owed it a duty of loyalty as bailees of knife samples and its "outside" customer list.  Stonebridge also alleged Defendants, either as employees or parties in a joint venture, had access to Art, mock-up templates, and "inside" customer lists and therefore owed it fiduciary duties not to compete.

The facts indicate that there was no bailment relationship between Stonebridge and any defendant and therefore no duty of loyalty.  Stonebridge's motion is DENIED and Defendants' motions are GRANTED as to the breach of fiduciary duties cause of action on bailment grounds.

Stonebridge cites in its motion that the "common law duty of loyalty to an employer applies to at-will employees, even those without a continuing non-compete agreement and absent a written employment contract, up to the day they leave." (Doc. 39 at 22, *citing Vigoro Industries, Inc. v. Crisp*, 82 F.3d 785 (8th Cir. 1996)).  The argument fails because the Carmichaels and Cutting-Edge were never employed by Stonebridge.  The argument also fails as to former employees Massey and Taylor because the alleged wrong took place after their self-termination and therefore there was no violation of employment

fiduciaries duties.  Specifically, the allegations that Massey shared and used (as opposed to downloading) certain files occurred after his self-termination and after he commenced working for Taylor and TaylorMade.  Stonebridge's motion is DENIED and Defendants' motion is GRANTED as to the breach of fiduciary duties cause of action on employment grounds.

As to the latter ground of the allegation, the Carmichaels and Cutting-Edge have always been in competition with Stonebridge and many of the items complained of were provided by Stonebridge to assist the Carmichaels and Cutting-Edge in servicing their customers' orders.  (Doc. 45 at 9).  The items used in this manner do not represent any breach of fiduciary duties; nonetheless, there are disputes as to the subsequent use of these items and the roles they played in Stonebridge's "outside" reorders and "inside" orders and the resulting competition that constitute the alleged breach. The parties have raised issues of material fact to survive summary judgment and therefore their motions are DENIED as to the breach of fiduciary duties cause of action on access grounds.

Accordingly, the parties' motions on the breach of fiduciary duties cause of action is GRANTED in part and DENIED in part.

ii.  **State Deceptive Trade Practices Act**

The parties' motions on the State Deceptive Trade Practice

Act cause of action are DENIED.  Ark. Code. Ann. § 4-88-113(f)
provides a civil action to recover actual damages and if
appropriate reasonable attorney's fees by "any person" who
suffers actual damage or injury as a result of an offense or
violation of Article 4, Chapter 88[3].  Definitional statutes
setting out offenses under Chapter 88 include subchapter 107
(illustrative acts) and subchapter 108 (deception or concealment
with intent others rely).  *See* A.C.A. §§ 4-88-107(a)(3), (a)(5)
and 4-88-108.  Stonebridge's allegations are made in connection
to Defendants' website, photographs, postcard mailings, etc.
that contained certain phrases, including but not limited to
"The Original" and "Our Number One Seller for Nearly 10 Years"
which implied affiliation, source, and quality.  (Doc. 38 at 44,
Doc. 41 at 11, Doc. 44 at 20).

Defendants argued that only the Carmichaels and Cutting-
Edge may have made any kind of representation to the public
concerning the goods and services of Stonebridge and therefore
this cause of action is meritless as to Defendants Taylor,
Massey and TaylorMade.  Further, although the Carmichaels and
Cutting-Edge admit to instances the complained of language was
used in their advertisements, etc., they argued that any

---

[3] Stonebridge states "that Under Ark. Code. Ann. § 4-88-104 violation may not
be addressed by aggrieved persons via injunction but rather only by the
Attorney General; as such, no injunctive relief is requested specifically
with respect to this cause of action."

statements made were true.  (Doc. 42 at 9).  Specifically, the Carmichaels and Cutting-Edge assert that knives they sold in connection with those advertisements were the same ones previously sold, i.e., they purchased knives from the same supplier[4] as Stonebridge and engraved the knives in the same manner and therefore there was no deception, fraud or false pretense.  (Doc. 65 at 37).

Stonebridge disputes Defendants' assertion that the knives are the same and cite to the deposition of B&F System's owner John Meyer.  (Id., Doc. 42 at 13, Doc. 44 at 22).  In addition, Stonebridge cites testimony that it stamped knives it etched with identifying markers to discern their products apart from others.  (Id. at 40, Doc. 44 at 8).

Accordingly, and notwithstanding Defendants' admissions, issues of material fact exist to preclude summary judgment on the state deceptive trade practices act cause of action and therefore the parties' motions are DENIED.

iii. **Misappropriation of Trade Secrets**

The parties' motions on the misappropriation of trade secrets cause of action is GRANTED in part and DENIED in part. Whether information constitutes a trade secret under the Arkansas Trade Secrets Act is governed by six factors: 1) the

---

[4] B&F Systems was and remains to be Stonebridge's and Cutting-Edge's knife supplier.

extent to which the information is known outside the business; 2) the extent to which the information is known by employees and others in the business; 3) the extent of measures taken to guard the secrecy of the information; 4) the value of the information to the party and competitors; 5) the amount of money or effort expended by the party in developing the information; and 6) the ease or difficulty with which the information could be properly acquired by others.  *Wal–Mart Stores v. P.O. Mkt., Inc.*, 347 Ark. 651 (2002).  Stonebridge seeks relief for appropriation of their trade secrets, i.e., their customer lists and Art. Defendants argue that "there can be no question there has been no appropriation of a "trade secret" with respect to customers initially generated by the sale efforts of Cutting-Edge.  Thus, this cause of action must be limited to only those customers who had never done business with Cutting-Edge before it terminated its relationship with Stonebridge.  The reason for this is simple – Cutting-Edge is the one who provided all the information to Stonebridge in the first place so it already had the so-called "trade secrets" in its possession and rightfully so."  (Doc. 53 at 17) (original internal quotation marks). Stonebridge's "outside" customer list (of customers who purchased through/from Cutting-Edge) does not constitute a trade secret because that list is in essence Cutting-Edge's list of customers (who had their orders fulfilled using Stonebridge's

engraving services).  Accordingly, as to Stonebridge's "outside" customer list of Cutting-Edge customers, Stonebridge's motion is DENIED and Defendants' motions are GRANTED.

As to Stonebridge's list of "inside" customers and "outside" customers who purchased from other distributors[5], the parties dispute facts which are material to the definitional elements of a trade secret.  For example, the parties disagree on the level of effort taken to create the lists, guard its secrecy, and ease of acquiring the information.  (Doc. 41 at 9, Doc. 42 at 11).  Likewise, the parties disagree on facts surrounding whether the Art was a trade secret.  For example, the parties raise multiple arguments surrounding the formats of the Art files, i.e., Stonebridge argues that files that were kept secret were only shared with others in PDF format to protect against unauthorized use whereas Defendants argue that both PDF and CDR formats were shared (but in any event either format would allow for ease of use and manipulation by others). (Doc. 65 at 9, 18).  Issues of material fact exist in connection with Stonebridge's list of "inside" customers and "outside" customers not serviced by Cutting-Edge, and the Art and therefore the parties' motions on the misappropriation of trade secrets cause of action on this ground are DENIED.

    iv.  **Tortious Interference with Known Business Expectancy**

---

[5] See Doc. 38 at 34-35.

The parties' motions on the tortious interference with known business expectancy cause of action are DENIED. Stonebridge argues that there is a business expectancy that both their "inside" and "outside" customers would reorder from it. Defendants argue there was neither a valid contractual relationship nor a business expectancy and therefore there could be no tortious interference.  The Court finds problematic Stonebridge's claim that it had a business expectancy with "outside" customers as the facts suggest that the majority of customers were unaware which etcher performed the engraving service on their knives.

Most if not all communications to Stonebridge "outside" customers came from or was made to appear to have come from the distributor/seller.  (Doc. 46 at 4).  The majority of communications that Stonebridge had with "outside" customers who purchased through Cutting-Edge were indirect as they flowed through Cutting-Edge.  In the instances that Stonebridge directly dealt with "outside" customers efforts were made to disguise its identity, i.e., drop shipments made by Stonebridge had return addresses for Cutting-Edge and all Stonebridge identifying labels removed.  (Doc. 46 at 20).

Notwithstanding the Court's observations, the parties have raised issues of material fact to survive summary judgment and therefore the parties' motions on the tortious interference with

known business expectancy cause of action are DENIED.

   v.   **15 U.S.C. § 1125: Lanham Act Violations & Deceptive Trade Practices Act (federal)**

Stonebridge brought this cause of action under the Lanham Act deception of origin claim ("palming off") under subsection (A) and the Lanham Act false advertising claim ("misrepresentation") under subsection (B).   The parties' motions are GRANTED in part and DENIED in part.   To establish a violation under the Lanham Act deception of origin claim ("palming off") under subsection (A) a plaintiff must prove that the materials used by the defendant created a likelihood of confusion, deception or mistake on the part of the consuming public.   15 U.S.C. § 1125(a)(1)(A).   To establish a Lanham Act false advertising claim under subsection (B), a plaintiff must prove "(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a loss of goodwill associated with its products".   *Buetow v. A.L.S.*

*Enterprises, Inc.*, 650 F.3d 1178 (8th Cir. 2011), *citing United Indus. Corp. v. Clorox. Co.*, 140 F.3d 1175 (8th Cir. 1998); 15 U.S.C. § 1125(a)(1)(B).

The parties raise similar arguments in support of their positions to the "palming off" and "misrepresentation" claims as they did for the state deceptive trade practices act claim discussed above.  The complained of materials and the relating allegations are common between the claims and therefore raise the same issues of material facts.  (Doc. 45 at 4).  For example, under the "palming off" claim the parties dispute whether there is deception resulting from Defendants' advertising materials, telephonic sales pitches, et cetera. Stonebridge's position is that the knives it engraved are different than those that TaylorMade engraved and therefore Cutting-Edge's claim to customers that they are receiving the same knives is deceptive and in violation of subsection (A).  As to subsection (B) Stonebridge's position is that Defendants' statements (as opposed to their materials) form the basis of Defendants' violation.  Issues of material fact preclude summary judgment and therefore the parties' motions on the Lanham Act Violations and Federal Deceptive Trade Practices Act causes of action are DENIED.

vi. **Negligent Supervision**

Stonebridge's motion on its Negligent Supervision cause of

action was not specifically argued in the moving brief and therefore it is DENIED.  (See doc. 65 at 48-49, Section 7). Defendants' motions are DENIED as there are issues of material fact relating to the alleged conduct involving the flashdrive and shared files.  (Doc. 46 at 10, Doc. 35 Exh. 2, Doc. 46 at 32).

vii. **Civil Rico**

The parties' motions are DENIED as premature.  Stonebridge seeks a finding of liability under Racketeering Influenced Corrupt Organizations law (18 U.S.C. 1961 *et seq.*) ("RICO") in the alternative to the injunction requested as part of the federal and state unfair competition and state trade secrets claim if that injunction is denied.  In view of the Court's rulings as to the federal and state unfair competition and state trade secrets claims, the merits of the Civil Rico Claim is not reached and therefore the parties' motions as to its Civil Rico cause of action are DENIED as premature.

viii.     **Fraud**

Defendants' motions as to the fraud causes of action are DENIED.  There are issues of material fact that preclude summary judgment.  For example, the parties dispute the number of instances that customer orders were "diverted" away from Stonebridge following the setup process.  (Doc. 65 at 51). Defendants admit there were instances that Stonebridge "outside"

customers placed reorders with Defendants, but had their orders fulfilled with knives that were not engraved by Stonebridge. (Id.) Defendants however deny any instances, or any wrongdoing, where Stonebridge "outside" customers' initial orders were "diverted" from Stonebridge after the initial setup process was completed, i.e., that Defendants would fraudulently communicate to Stonebridge that customer orders were canceled when they were in actuality sent instead to TaylorMade for engraving services. (Doc. 45 at 7). These issues of material fact and those discussed above preclude summary judgment and therefore Defendants' motions on the fraud cause of action are DENIED.

ix. **Conversion**

Defendants' motions as to the conversion causes of action are DENIED. Issues of fact relating to whether the files Stonebridge sent out allowed for easy manipulation and use of the art weigh on the property interest determination. Stonebridge's position is that it has never delivered to Cutting-Edge or any customers any vector-based CDR files that could be redistributed to and readily used by another etcher, but rather, only sent files in PDF format which could not be used by another etcher. Defendants assert otherwise and argue that the files shared are evidence that Stonebridge has no property interest in any of the files shared. The discrepancy in the parties' positions presents issues of material fact that

preclude summary judgment and therefore Defendants' motions are DENIED.

**V.   Conclusion**

For the foregoing reasons Stonebridge's Motion for Partial Summary Judgment (Doc. 35) is **GRANTED in part and DENIED in part**, Separate Defendants John Mark Taylor and TaylorMade Unlimited, LLC's Motion for Summary Judgment (Doc. 41) is **GRANTED in part and DENIED in part**, Separate Defendants Keith Carmichael, Glenna Carmichael and Cutting-Edge USA, LLC's Motion for Summary Judgment (Doc. 44) is **GRANTED in part and DENIED in part**, and Separate Defendant Steven Massey's Motion for Summary Judgment (Doc. 49) is **GRANTED in part and DENIED in part**.

This matter remains set for a bench trial on the following: breach of fiduciary duties on access grounds, state deceptive trade practices act, misappropriation of trade secrets as to Stonebridge's list of "inside" customers and "outside" customers who purchased from a distributor other than Cutting-Edge, tortious interference with known business expectancy, Lanham Act Violations, federal deceptive trade practices act, negligent supervision, civil rico, fraud and conversion.  Trial shall begin on **Monday, September 30, 2013 at 9:00am in Hot Springs, Arkansas.**

Counsel are directed to mark and exchange all exhibits prior to trial.  Exhibits are to be listed in numerical

sequence, with notations as to which exhibits, if any, will be admitted by stipulation of the parties.  The AO187 – Exhibit and Witness List may be found on the Court's website.  The parties are instructed to provide the Court with this list by **9:00 a.m. on Friday, September 27, 2013.**

IT IS SO ORDERED this 2nd day of July, 2012.

/s/ Robert T. Dawson
Honorable Robert T. Dawson
United States District Judge